## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

_____

**MARLINE SIMINGTON,**

                    **Plaintiff**

**v.**                                        **Case No.: 5:11-cv-01391-M**

**ZWICKER & ASSOCIATES, P.C.,**

                    **Defendant**

_____

## DEFENDANT ZWICKER & ASSOCIATES, P.C.'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF
## IN SUPPORT THEREOF

### Introduction

In this case, Marline Simington ("Simington") alleges that Zwicker & Associates, P.C. ("Zwicker"), a collection law firm, engaged in "harassing collection activities" against her while attempting to collect her outstanding credit card debt owed to Zwicker's client, Discover Bank, the original creditor.  Simington further alleges that Zwicker continued the "harassing collection activities" until Zwicker "transfered/assigned said account to Defendant Burton E. Stacy Jr, aka. [sic] Hood & Stacy P.A. on or after April 11, 2010."  The undisputed facts set forth below with citations to the record show that before April, 2010, Zwicker, which is based in Massachusetts and does not file lawsuits in Oklahoma, assigned responsibility for handling Simington's account to Hood & Stacy P.A. (hereinafter, "Hood & Stacy"), a collection law firm which files lawsuits in Oklahoma, that thereafter, Zwicker ceased all communications with Simington and that Hood & Stacy, not Zwicker, sued Simington on her credit card debt.

<u>Simington's factual allegations against Zwicker</u>

Simington's Complaint, which is confusing and at times incoherent, alleges that Zwicker committed the following wrongful acts:

(1)  "Defendant Zwicker & Assoc. began harassing collection activities against [Simington] on July 29, 2009, and continued until they transferred/assigned said account to Defendant Burton E. Stacy Jr., aka. Hood & Stacy P.A. on or after April 11, 2010."  Complaint, ECF Doc. # 1,¶ 8.

(2)  "Defendant Discover Bank, Zwicker & Assoc. and Burton E. Stacy Jr, aka. Hood & Stacy P.A., for violations of Federal law for impermissible credit pulls during or for litigation, failure to report a disputed debt, and failure to validate a disputed debt…." Complaint, ECF Doc. # 1, ¶ 59, within Count III, "VIOLATIONS OF THE FAIR CREDIT REPORTING ACT" [15 U.S.C. § 1681, *et seq.,* (hereinafter, "FCRA")].

(3)  "Defendant Burton E. Stacy Jr., aka. Hood & Stacy P.A., or Zwicker & Assoc.," "[b]y reporting [Simington's credit card account] sued on to credit bureaus with misleading information regarding the nature and/or status of said alleged debt….have violated [multiple provisions of the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* (hereinafter, "FDCPA")].  Complaint, ECF Doc. # 1, ¶¶ 39, 40.

(4)  "Defendant Zwicker & Assoc., knowingly made a large number of harassing and repeated blocked phone calls to [Simington's] cell phone, while under a written cease & decease" [sic] in violation of the Telephone Consumer

2

Protection Act [47 U.S.C. § 227 (hereinafter, "TCPA")]. Complaint, ECF Doc. # 1, ¶¶ 9, 13, 14.

(5) "Defendant Zwicker & Assoc., illegally used an autodialer, predictive dialer, and/or prerecorded calls to [Simington's] cell phone without permission to do so in violation of the [TCPA]." Complaint, ECF Doc. # 1, ¶ 11.

(6) "Defendant Zwicker & Assoc. refused on one or more occasions to give the mini-miranda and other disclosures as required when speaking with [Simington] in its efforts to collecting the debt," in violation of the FDCPA. Complaint, ECF Doc. # 1, ¶¶ 10, 51.

(7) "Defendant Burton E. Stacy Jr., aka. Hood & Stacy P.A., And Zwicker & Assoc., have violated 15 U.S.C. §1692d by….continuing to pursue collection of a disputed and unverified debt; and filing suit on an invalid debt, forcing [Simington] to defend against an invalid action…" Complaint, ECF Doc. # 1, ¶ 38.

To Zwicker's reading, with respect to the remaining counts of the Complaint, Simington does not plead any additional facts in support of those counts.

Based on the undisputed facts set forth below with citations to the record, and as supported by the affidavits with exhibits filed herewith and the authorities cited below, Zwicker respectfully moves for summary judgment on the basis that there is no genuine dispute of material fact so that Zwicker is entitled to judgment as a matter of law.

## Statement of Undisputed Facts

1.    The parties have stipulated that Zwicker is a law firm and professional corporation organized under the laws of Massachusetts with a principal place of business in Massachusetts, and that Zwicker is a debt collection law firm and a "debt collector" as defined under the FDCPA.  Joint Status Report and Discovery Plan (hereinafter, "Joint Report"), ECF Doc. #35, section 3(C), no. 5, *see,* 15 U.S.C. § 1692(a)(6), and it is undisputed that Zwicker is not a "consumer reporting agency," i.e.,, a credit bureau, as defined under Section  1681a(f) of FCRA.

### When Zwicker first contacted Simington regarding her account

2.    Michael Koziol (hereinafter, "Koziol") is Vice President, Collection Operations of Zwicker, and in that capacity, and subject to the directions of the attorneys of the firm, oversees the Zwicker non-attorney collection personnel who attempt to contact consumers to resolve the balances due on their accounts. Affidavit of Michael Koziol in Support of Zwicker & Associates, P.C.'s Motion for Summary Judgment (hereinafter, "Koziol Aff."), ¶¶ 1-2.

3.    Koziol's responsibilities include overseeing the maintenance of the records for all consumer accounts placed with Zwicker by Zwicker's clients, and all such records are maintained as business records by Zwicker.  Koziol Aff., ¶¶ 1-2.

4.    Koziol has been employed by Zwicker since 1998 and has overseen Zwicker's collection operations for approximately nine years.  Koziol Aff., ¶ 1.

5.    Simington's credit card account was placed with Zwicker for collection by Zwicker's client, Discover Bank, the original creditor, on or about September 1, 2009. Koziol Aff., ¶¶ 4, 7, and accompanying Ex. 2.

6.    When Zwicker receives an account from one of its clients, Zwicker receives contact information for the account holder as part of the account record.  Koziol Aff., ¶ 7.

7.    Until Zwicker receives an account record from its client, Zwicker has no information regarding the account, including the name of the account holder or the account holder's contact information, i.e., until Zwicker receives a particular account from Zwicker's client Zwicker does not know of the existence of the account.  Koziol Aff., ¶ 7.

8.    With respect to Simington's allegation that Zwicker first contacted her regarding the account on July 29, 2009, *see,* Complaint, ECF Doc. # 1, ¶ 8, because Zwicker did not receive Simington's account until September 1, 2009, Zwicker could not possibly have attempted to contact Simington about the account before that date.  Koziol Aff., ¶ 8.

9.    As explained further below, Zwicker did not contact Simington regarding her account until after Zwicker received the account from Zwicker's client on September 1, 2009.  *See,* Affidavit of Brenda-Lee Matte in Support of Zwicker & Associates, P.C.'s Motion for Summary Judgment (hereinafter, "Matte Aff.") and accompanying exhibits.

<u>Whether, when Zwicker obtained a copy of Simington's credit report,
the consumer  reporting agency released the report to Zwicker for
a "permissible purpose" as defined under FCRA</u>

10.   Consistent with Zwicker's practice, Zwicker requested a summary credit report for Simington from Experian, a consumer reporting agency as defined under FCRA, on or about September 2, 2009 in connection with Zwicker's effort to collect Simington's account, and Zwicker received the report, which is part of the account record for Simington's account which Zwicker maintains as a business record.  Koziol Aff., ¶¶ 3-5, and accompanying Ex. 1.

11.   At all relevant times, Simington knew that Zwicker was collecting a debt on behalf of Zwicker's client, Discover Bank. Complaint, ECF Doc. #1, ¶¶ 3, 5, 7, 10, 14.

<u>Whether Zwicker violated FCRA by not notifying credit reporting agencies that
Simington disputed her debt</u>

12.   With respect to Simington's allegation that Zwicker (and Hood & Stacy) failed to report her debt as disputed in violation of FCRA, Complaint, ECF Doc. # 1, ¶ 59, and that Zwicker (or Hood & Stacy) "reporting….to credit bureaus with [sic] misleading information regarding the nature and/or status of said alleged debt," *id.,* ¶¶ 39, 40, Zwicker did not report any information to any consumer reporting agencies, i.e., credit bureaus, regarding Simington's account.  Koziol Aff., ¶ 1.

13.   Zwicker does not furnish information to consumer reporting agencies.  Affidavit of Gary T. Shore in Support of Zwicker & Associates, P.C.'s Motion for Summary Judgment (hereinafter, "Shore Aff."), ¶ 8, Koziol Aff., ¶ 16.

Whether Zwicker knowingly made a large number of
harassing and repeated blocked phone calls to Simington's cell phone
"while under a written cease and [desist]" in violation of the TCPA

(a) Whether Zwicker ever received a letter from Simington requesting that Zwicker cease
and desist communicating with her

14.   Simington has not alleged that she sent Zwicker a letter which Zwicker received requesting that Zwicker cease and desist communicating with her. *See*, Complaint, ECF Doc. #1.

15.   Simington has not alleged that she sent Zwicker a letter requesting that Zwicker cease and desist communicating with her.  *See*, Complaint, Doc. #1.

16.   Simington has offered no evidence that she sent Zwicker a letter which Zwicker received requesting that Zwicker cease and desist communicating with her.

17.   Simington has offered no evidence that she ever sent Zwicker a letter requesting that Zwicker cease and desist communicating with her.

(b) When the 'DO NOT CONTACT" instruction was placed on Simington's account
record maintained by Zwicker

18.   As shown in Simington's account record maintained by Zwicker, Zwicker assigned Simington's account to Hood & Stacy on January 27, 2010, meaning that on that date Zwicker assigned to Hood & Stacy the responsibility for handling the account, and Hood & Stacy acknowledged the assignment on February 23, 2010.  Koziol Aff., ¶¶ 8, 9, and accompanying  Exs. 2, 3.

19.  Attached to the Koziol Aff. as Exhibits 2 and 3 are portions of the electronic account record for Simington's account which is maintained by Zwicker as a business record, and the instructions "DO NOT CONTACT" and "*NO Z&A CALLS" appear on each of the exhibits, which were printed from Simington's account record on September 26, 2012, the date referenced in the upper right-hand corner of each exhibit.  Koziol Aff., ¶¶ 6, 11, and accompanying Exs. 2 and 3.

20.  With respect to Simington's apparent assertion that when Zwicker received her account from Zwicker's client, the account had a "Do Not Contact" instruction on it, the "DO NOT CONTACT" and "*NO Z&A CALLS" instructions were not entered on Simington's account record until February 23, 2010 when Hood & Stacy acknowledged Zwicker's assignment of the account to Hood & Stacy.  Koziol Aff., ¶¶ 12, 13, and accompanying Ex. 3.

21.  Zwicker's standard practice, once Zwicker assigns an account to another law firm such as Hood & Stacy, is to cease all attempts to contact the consumer and all other collection activities on the account.  Koziol Aff., ¶ 10.

22.  Consistent with Zwicker's standard practice, Zwicker placed the above instructions on Simington's account record when Hood & Stacy acknowledged on February 23, 2010 that Zwicker had assigned the account to Hood & Stacy, Zwicker placing the instructions in order to prevent further attempts by Zwicker personnel to communicate with Simington and all other collection efforts on the account, and Simington is correct in her statement that Zwicker ceased collection activities on her

8

account when Zwicker "transferred/assigned" her account to Hood & Stacy.  Koziol Aff., ¶ 10; *see,* Complaint, ECF Doc. # 1, ¶ 8.

 (c) Whether Zwicker ever called Simington at telephone number 580-695-1983, which Simington alleges is her cell phone number using an autodialer or predictive dialer

23.   Three telephone numbers are referenced in the record of this case as being connected to Simington.  *See,* telephone numbers referenced below.

24.   The parties have stipulated that at all relevant times, telephone number 580-248-7119 (hereinafter, "the 7119 number") has been a land line. Joint Report, ECF Doc. #35, section 3(C), no. 2.

25.   The parties have stipulated that at all relevant times, telephone number 580-248-8317 (hereinafter, "the 8317 number") has been a business land line.  Joint Report, ECF Doc. #35, section 3(C), no. 3-4.

26.   Simington has alleged that telephone number 580-695-1983 (hereinafter, "the 1983 number") is her cell phone number.   Joint Report, ECF Doc. #35, Section 1, Plaintiff's portion.

27.   Simington alleges that Zwicker made blocked calls to the 1983 number.  Complaint, ECF Doc. #1, ¶ 9; Joint Report, ECF Doc. #35, Section 1, Plaintiff's portion.

28.   Gary T. Shore (hereinafter, "Shore") is Vice President of Information Technology and Chief Security Officer for Zwicker, and in that capacity, subject to directives issued by Zwicker's attorneys, Shore oversees all of Zwicker's information technology and all related processes. Shore Aff., ¶ 1.

29.   Shore has been employed by Zwicker since 1993 and has had the above responsibilities over the entire time that he has been employed by Zwicker. Shore Aff., ¶ 1.

30.   Shore's responsibilities include overseeing the operation of the autodialer which Zwicker uses to make some of the telephone calls which Zwicker makes to consumers regarding their accounts, and overseeing the process whereby all telephone calls which Zwicker makes on an account using the autodialer are notated on the electronic account record for the account which Zwicker maintains. Shore Aff., ¶¶ 2-3.

31.   Zwicker's autodialer can be operated in a predictive mode or in a non-predictive mode, i.e., Zwicker does not have a predictive dialer which is separate from Zwicker's autodialer.  Shore Aff., ¶ 3.

32.   The entry on the electronic account record for each autodialer call which Zwicker makes on the account lists the date and time of the call, the result of the call and the last four digits of the telephone number which the dialer called. Shore Aff., ¶ 4.

33.   All telephone calls which Zwicker makes using the autodialer are entered on the electronic account record, including both completed calls, i.e., calls which were answered by a live person, an answering machine, or a voicemail, and incomplete calls, i.e., those on which there was no answer. Shore Aff., ¶ 4.

34.   Attached as Exhibit 1 to the Shore Aff. is the report of all autodialer calls made by Zwicker on Simington's account going forward from the date on which Zwicker first

received the account, September 1, 2009, until the present. Shore Aff., ¶ 5, and accompanying Ex. 1.

35.   The report of autodialer calls which Zwicker made on Simington's account as referenced in the previous paragraph is part of the electronic account record for Simington's account which Zwicker maintains, and which, like all other account records which Zwicker maintains, is a business record of Zwicker. Shore Aff., ¶¶ 3-5, Koziol Aff. ¶ 2.

36.   As shown in Exhibit 1 to the Shore Aff., all of the calls on Simington's account which Zwicker made using an autodialer were made to the 8317 number, which the parties have stipulated is a land line, or to the 7119 number, which the parties also have stipulated is a land line.  Shore Aff., ¶ 6.

37.   None of the calls which Zwicker made on Simington's account using the autodialer were made to the 1983 number which Simington alleges is her cell phone number. Shore Aff., ¶ 6; Matte Aff., ¶ 4, and accompanying Ex. 1.

38.   Zwicker has implemented procedures to ensure that Zwicker personnel cannot place telephone calls to cell phone numbers by using the autodialer but instead must dial cell phone numbers manually. Shore Aff., ¶ 7.

39.   Brenda-Lee Matte is Director of Telecommunications for Zwicker and oversees the operation and maintenance of Zwicker's telecommunications systems, including reviewing and overseeing the maintenance of the telephone billing records which

Zwicker receives monthly and maintains as business records, as she has done since joining Zwicker in 2003. Matte Aff., ¶¶ 1-2.

40.   Zwicker's telecommunications provider bills Zwicker for all completed calls made by Zwicker, meaning all calls on which a live person answers the phone or the call is answered by voicemail or an answering machine, and all such calls are listed on Zwicker's monthly bills. Matte Aff., ¶ 5.

41.   Zwicker's telecommunications provider also bills Zwicker for all calls which Zwicker receives, and all such calls are listed on Zwicker's telephone bills.  Matte Aff., ¶ 5.

43.   Attached to the Matte Affidavit as Exhibit 1 are portions of Zwicker's monthly telephone billing records for the period from July 10, 2009 through December 31, 2011, showing that Zwicker never called telephone number 580-695-1983, the telephone number which Simington alleges is her cell phone number. Matte Aff., ¶¶ 4-7, and accompanying Exhibit 1.

(d) Whether Zwicker made pre-recorded calls to Simington's cell phone number

44.   With respect to Simington's claim that Zwicker made pre-recorded calls to Simington's cell phone number without her permission in violation of the TCPA, Complaint, ECF Doc. # 1, ¶ 11, Zwicker did not make any pre-recorded calls to Simington.  Koziol Aff., ¶ 16.

45.   Zwicker does not make pre-recorded calls.  Koziol Aff., ¶1 6, Shore Aff., ¶ 9.

### Whether Zwicker failed to validate Simington's debt in violation of FCRA, as Simington pleads, or in violation of the FDCPA

46.   With respect to Simington's allegation that Zwicker failed to validate her debt in violation of FCRA, Complaint, ECF Doc. # 1, ¶ 59, Simington has not alleged that she notified Zwicker in writing within the 30-day period specified under section 1692g(b) of the FDCPA that she disputed her debt.  *See*, Complaint, ECF Doc. #1.

47.   Simington has not offered any evidence that she notified Zwicker in writing within the 30-day period specified under section 1692g(b) of the FDCPA that she disputed her debt.

48.   Zwicker admits that it did not send validation of Simington's debt to Simington.

### Whether  Simington and Zwicker communicated during the one-year period preceding the filing of this lawsuit, i.e., within the FDCPA statute of limitations

### (a) Whether Zwicker initiated communication with Simington during the one-year period

49.   Simington filed this lawsuit on November 23, 2011.  *See* Complaint, ECF Doc. #1.

50.   Simington has admitted that Zwicker ceased collection activities on Simington's account when Zwicker "transferred/assigned" Simington's account to Hood & Stacy. *See,* Complaint, ECF Doc. # 1, ¶ 8.

51.   Zwicker's account record for Simington's account shows that when Hood & Stacy acknowledged on February 23, 2010 that Zwicker had assigned her account to Hood & Stacy, Zwicker placed instructions on the account consistent with Zwicker's standard

practice of stopping all efforts to contact the consumer and all other collection activities on the account.  Koziol Aff., ¶¶ 10, 12-14.

52.   Zwicker's telephone billing records show that Zwicker did not initiate telephone communications to either the 7119 land line number or the 8317 land line number during the period from February 10, 2010 through December 31, 2011.  Matte Aff., ¶ 9, and accompanying Ex. 2.

53.   Simington has admitted that Zwicker "did not make any calls during the time period February 10, 2010 through December 31, 2011 to either the 8317 number or the 7119 number." Plaintiff's Responsive Objections, Motion to Strike First Affidavit of Brenda-Lee Matte, or alternatively, a Motion for Summary Judgement [sic] (hereinafter, "Motion to Strike Matte Aff."), ECF Doc. #40, p. 6, ¶ 9.

54.   Attached to the Matte Affidavit as Exhibit 1 are portions of Zwicker's monthly telephone billing records for the period from July 10, 2009 through December 31, 2011, showing that Zwicker never called telephone number 580-695-1983, the telephone number which Simington alleges is her cell phone number. Matte Aff., ¶¶ 4-7, and accompanying Ex. 1.

<u>(b) Whether Simington initiated communication with Zwicker<br>within the one-year period preceding the filing of this lawsuit</u>

55.   The only communication between Zwicker and Simington on or after November 23, 2010, was initiated by Simington, who telephoned Zwicker on December 21, 2010 from the 8317 land line number, as shown in Zwicker's telephone billing records.  Matte Aff., ¶¶ 11-13, and accompanying Ex. 3.

56.   When Simington called Zwicker from the 8317 number on December 21, 2010, Simington called Zwicker's toll-free telephone number, 800-370-2251. Matte Aff., ¶ 12, and accompanying Ex. 3.

57.   Zwicker set up the 800-370-2251 toll-free number for consumers to call Zwicker regarding their accounts, and Zwicker pays a fee to its telecommunications provider on an ongoing basis for this toll-free number. Matte Aff., ¶ 12.

58.   Zwicker provides this toll-free number at Zwicker's expense to encourage consumers to call to discuss their accounts—when a consumer calls the number, Zwicker, not the consumer, is billed for the call.  Matte Aff., ¶ 12.

### The content of the communication between Simington and Zwicker during the telephone call which Simington initiated on December 21, 2010

59.   Zwicker's telephone communications system is set up so that when a person calls Zwicker, the person will hear an electronic greeting before the caller can be connected to a live Zwicker representative.  Matte Aff., ¶ 14.

60.   The electronic greeting which all persons calling Zwicker hear when the call is answered on Zwicker's end, informs the caller, among other things, that Zwicker is a law firm whose primary business is debt collection, so that the communication should be considered an attempt to collect a debt and as such any information obtained will be used for that purpose.  Matte Aff., ¶ 14.

61.   The electronic greeting which all persons calling Zwicker hear also includes a statement that the call may be recorded.  Matte Aff., ¶ 14.

62.   Zwicker's telephone system has been set up so that a person calling Zwicker cannot circumvent the electronic greeting, i.e., the caller must first listen to the information referenced in the two preceding paragraphs before being connected to a live representative.  Matte Aff., ¶ 14.

63.   Exhibit 4 to the Matte Affidavit consists of a CD which contains the first part of the electronic voice greeting which Simington would have heard when she called Zwicker from the 8317 number on December 21, 2010, if Simington had selected "English" as the language in which to listen to the greeting and selected the "Bankcard" option. Matte Aff., ¶ 15.

64.   As shown by Exhibit 4, when Simington called Zwicker on December 21, 2010, she would have heard the electronic greeting state, among other things, that Zwicker is a law firm whose primary business is debt collection, so that the communication should be considered an attempt to collect a debt and as such any information obtained will be used for that purpose, and that the call could be recorded.  Matte Aff., ¶¶ 14, 15.

65.   Zwicker maintains a call recording system which automatically records all telephone calls made by Zwicker's collection personnel (referred to as "outbound calls") and all calls received by Zwicker's collection personnel (referred to as "inbound calls"), the recordings being maintained as business records by Zwicker.  Matte Aff., ¶ 3.

66.   Zwicker's collection personnel do not have the ability to prevent a telephone communication from being recorded, or to interrupt, alter or delete a recording.  Matte Aff., ¶ 3.

67.   The CD attached as Exhibit 4 to the Matte Affidavit also includes recordings of Simington's conversations with the two Zwicker representatives with whom she spoke when she called Zwicker on December 21, 2010.  Matte Aff., ¶ 16.

68.   As can be heard on the recordings of Simington's conversations with the Zwicker representatives on December 21, 2010, Simington identified herself at the outset by name and as a Discover cardholder, and after she did so, the Zwicker representative who had answered her call told her that he would transfer her to a Zwicker employee who handled Discover accounts.  Matte Aff., ¶ 16, and accompanying Ex. 4.

69.   In Simington's conversation with the second Zwicker representative with whom she spoke on December 21, 2010; the Zwicker employee asked Simington to provide some identifying information so that the employee could find her account; the employee then told Simington that her account had been assigned to an attorney and that the employee would look up the attorney's telephone number to give to Simington; Simington then responded by saying, "Stacy"; the employee then gave Simington Hood & Stacy, P.A.'s telephone number and the call then ended.   Matte Aff., ¶ 16, and accompanying Ex. 4.

## Whether Zwicker filed suit against Simington

70.   With respect to Simington's allegation that Zwicker "filed suit on an invalid debt," Complaint, ECF Doc. # 1, ¶ 38, it is undisputed that Zwicker did not file suit against Simington and that Hood & Stacy filed suit against Simington on her credit card debt on behalf of Discover Bank.  *See,* Complaint, ECF Doc. #1, ¶¶ 16, 29.

17

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.   Legal standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998)(internal citations and quotations omitted); *Matlock v. Texas Life Ins. Co.*, 404 F. Supp. 2d 1307, 1310 (W.D. Okla. 2005); Fed R. Civ P. 56(e).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

The moving party has the initial burden to show there is an absence of evidence to support the nonmoving party's case. See *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). To survive a motion for summary judgment after this initial showing has been made, the nonmoving party must do more that "simply allege that there are disputed issues of fact; rather, the party 'must set forth specific facts showing that there is a genuine issue for trial.'" Fed. R. Civ. P. 56 (e); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat am otherwise properly supported motion for summary judgment.  *Id.* at 247-48.

## II.   Argument

### A.  Simington's FCRA claim fails as a matter of law

Each part of Simington's FCRA claim fails as a matter of law for the following reasons:

It is undisputed that Zwicker, which the parties have stipulated is a "debt collector" as defined under the FDCPA, is not a "consumer reporting agency" as defined under Section § 1681a(f) of FCRA.   As a threshold matter, Zwicker's position is that, as a plain reading of FCRA, a consumer may not sue a debt collector under FCRA for allegedly obtaining a copy of the consumer's credit report from a consumer reporting agency for an "impermissible purpose" because the act which the statute prohibits is not the impermissible obtaining of the report by a party such as Zwicker from a consumer reporting agency, but rather the release of the report by the consumer reporting agency for an impermissible purpose.  *Avyasian v. The Moore Law Group*, *et al.*, Case No. 2:12-CV-01506-ODW(Ex) (2012 U.S. Dist. Lexis 88556).  *See,* 15 U.S.C. § 1681b.

Without consideration of Zwicker's position stated in the previous paragraph, the undisputed facts establish that, even if FCRA could be read to proscribe a debt collector from obtaining a consumer's credit report for an "impermissible purpose" under the statute, Zwicker obtained Simington's credit report for an expressly permissible purpose for which a consumer reporting agency is permitted to release a consumer's credit report under the statute.  Specifically, and consistent with Zwicker's standard practice, Zwicker

obtained Simington's credit report from the consumer reporting agency in connection with Zwicker's efforts to collect Simington's credit card account.  *See,* 15 U.S.C. § 1681b (3)(A).  Statement of Undisputed Facts, Nos. 1, 10-13.

Zwicker is not a furnisher of information to consumer reporting agencies under FCRA, so that Zwicker has no obligation to report any information to consumer reporting agencies.  *See,* 15 U.S.C. § 1681, *et seq*.  Zwicker did not report any information regarding Simington's account to any consumer reporting agencies.  Statement of Undisputed Facts, Nos. 1, 10-13.

Simington's allegation that Zwicker violated FCRA by failing to validate her debt fails to state a claim upon which relief can be granted because the statute imposes no duty on a debt collector to validate a debt, *see,* 15 U.S.C. § 1681, *et seq*., and if such claim were treated as having pleaded a violation under the FDCPA, such claim would fail as a matter of law for the reasons set forth in Argument Section C below.

**B.** **Simington's TCPA claim fails as a matter of law**

Simington's TCPA claim fails because the undisputed evidence shows that Zwicker never made blocked calls to the 1983 telephone number which Simington alleges is her cell phone number; Zwicker never made calls to that number using an autodialer or predictive dialer; Zwicker never left pre-recorded messages at that number; and in fact, Zwicker never called that number at all.  Statement of Undisputed Facts, Nos. 14-45.

Additionally, Simington has offered no evidence that Zwicker contacted on many of the dates upon which she complains (before Zwicker received her account from its

client), or in violation of a written cease and desist request. Statement of Undisputed Facts, Nos. 5-9, 14-43.

###    C.    **Simington's FDCPA claim fails as a matter of law**

Each part of Simington's FDCPA claim fails as a matter of law for the following reasons:

Zwicker never initiated any communication with Simington within the one-year period preceding her filing of this lawsuit, i.e., within the statute of limitations as set forth in 15 U.S.C. § 1692k(d).  Statement of Undisputed Facts, Nos. 49-58.  Further, on the one occasion when Simington and Zwicker communicated within the one-year period referenced above, the communication occurred because Simington telephoned Zwicker; Zwicker provided the requisite disclosures to Simington; and Zwicker committed no violation of the FDCPA. Statement of Undisputed Facts, Nos. 59-69.

Because the undisputed evidence establishes that Zwicker and Simington had only one communication with Simington within the FDCPA statute of limitations and that Zwicker did not violate the statute during that communication, any alleged violations of the statute which Simington has pleaded fail as a matter of law because, even if it were established that such acts occurred, they would have occurred outside the statute of limitations.  Statement of Undisputed Facts, Nos. 49-69.

Without consideration of the statute of limitations bar to Simington's FDCPA claim referenced above, and insofar as Simington has pleaded that Zwicker failed to validate a disputed debt and continued collection of an unverified debt, Simington has not pleaded that Zwicker received from her a timely written dispute of her debt as specified

in 15 U.S.C. § 1692g(5)(b), or even that she sent Zwicker a timely written dispute.  The debt collector's duty with respect to validation of debts under the FDCPA is triggered by the consumer notifying the debt collector in writing within the 30-day period specified in the statute that the consumer disputes the debt. 15 U.S.C. § 1692g(a),(b).  If and only if the consumer provides such timely written notice, the debt collector is obliged to cease collection of the debt until such time as the debt collector forwards verification of the debt or a copy of a judgment to the consumer.  *See, id.*

For the above reasons, and based on the undisputed facts, *see,* Statement of Undisputed Facts, Nos. 46-47, Zwicker had no duty under the FDCPA to validate Simington's debt, so that Zwicker did not violate the statute by "failing" to send her validation of her debt; and Zwicker may not be held liable under the statute for continuing collection activity.  Thus, even if this claim which Simington has pleaded as a violation of FCRA fails as a matter of law even if the claim were treated as pleading an FDCPA violation, both because Simington did not take the steps necessary to trigger any duty on Zwicker's part to cease collection activity on her account until Zwicker provided validation of her debt, and because the undisputed facts establish that if such conduct on Zwicker's part occurred, it would be outside the FDCPA statute of limitations.  *See,* Statement of Undisputed Facts, Nos. 49-69.

Finally, as regards Simington's allegation that Zwicker violated the FDCPA by filing suit against her on her debt, it is undisputed that Zwicker never sued Simington on her debt.  Statement of Undisputed Facts, No. 70.

**D.**     **Simington's remaining claims fail as a matter of law**

Simington's remaining claims fail as a matter of law for the reasons set forth below.

Simington's remaining claims are for invasion of privacy by defendants including Zwicker, *see* Complaint, ECF Doc. # 1, Count IV, and as to un-named defendants, "negligent, wanton and/or intentional hiring and intentional conduct, supervision of incompetent debt collectors." Complaint, Count V. As regards the remaining count in the Complaint, for violation of Oklahoma statute, Zwicker respectfully submits that Simington having failed to plead any allegations against the un-named defendants, this count should be dismissed for failure to state a claim upon which relief can be granted.

Simington's Complaint does not allege any wrongful acts by Zwicker in support of the remaining counts pleaded, unless her allegations in support of her FCRA, TCPA and FDCPA claims are all taken as having been pleaded in support of her remaining claims even though she has not so pleaded. If those facts were taken as also having been pleaded in support of Simington's remaining claims, Simington's remaining claims fail as a matter of law fail because Simington's allegations against Zwicker have been refuted by the undisputed facts referenced above.

Insofar as Simington has pleaded claims against Zwicker in addition to her TCPA, FCRA and FDCPA claims, her pleading is plainly insufficient under the standards set forth by the United State Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ("*Iqbal*"). In that regard, if Simington's factual allegations offered in support of her TCPA, FCRA and

FDCPA claims are not considered, as Zwicker respectfully submit they should not be, the Complaint contains no factual allegations sufficient to entitle Simington to proceed on her other claims under the standards articulated in *Twombly* and *Iqbal*.

In *Twombly,* the Court clarified that although "detailed factual allegations" are not required at the pleading stage, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555.  As the Court stated in *Iqbal*, while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. 129 S. Ct. at 1950.   Simington's remaining claims consist entirely of labels, conclusions and formulaic recitation which the Supreme Court, and subsequently federal courts throughout the country have declared unacceptable.

Based on the undisputed facts and the authorities cited above, Zwicker respectfully submits that there is no genuine dispute of material fact so that Zwicker is entitled to judgment as a matter of law.

## <u>CONCLUSION</u>

For all of the reasons stated above, individually and collectively, Zwicker respectfully requests that the Court enter summary judgment in Zwicker's favor on all of Plaintiff, Marline Simington's claims.

Respectfully submitted,

ZWICKER & ASSOCIATES, P.C.

By its attorneys,

<u>/s/Robert W. Thuotte</u>
Robert W. Thuotte, Esq.
MA BBO #497490
Zwicker & Associates, P.C.
80 Minuteman Road
Andover, MA 01810
Tel. 866-367-9942, ext. 3112
Fax 978-686-6831
rthuotte@zwickerpc.com

Dated: October 1, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, I have caused the documents listed below to be served by first class mail, postage prepaid on Marline Simington, 709 SW Lee Boulevard, Lawton, Oklahoma 73501, and also to be served on her by means of attachments to email addressed to marlinesim2010@yahoo.com.

Documents served:

Motion for Summary Judgment and Brief in Support Thereof;
Indexed Table of Contents to Defendant Zwicker & Associates, P.C.'s Motion for Summary Judgment and Brief in Support Thereof;
Indexed Table of Authorities to Defendant Zwicker & Associates, P.C.'s Motion for Summary Judgment and Brief in Support Thereof;
Index of Exhibits to Defendant Zwicker & Associates, P.C.'s Motion for Summary Judgment and Brief in Support Thereof;
Affidavit of Gary T. Shore In Support of Motion for Summary Judgment;
Affidavit of Michael Koziol In Support of Motion for Summary Judgment;
Affidavit of Brenda-Lee Matte In Support of Motion for Summary Judgment;

/s/Robert W. Thuotte
Robert W. Thuotte